IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-03388-KLM

AMBROSE CRUZ,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER, COLORADO,
HEATHER R. JOSSI, #07059, and
KEITH VALENTINE,

    Defendants.

_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiff's **Motion to Limit Expert Opinion Testimony Pursuant to Federal Rule of Evidence 702 and** *Daubert* [#91] (the "Motion"). Defendants filed a Response [#95] in opposition to the Motion [#91], and Plaintiff filed a Reply [#101]. The Court has reviewed the briefs, the entire case file and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#91] is **DENIED**.[1]

## I. Background

---

[1] This case has been referred to the undersigned for all purposes pursuant to D.C.COLO.LCivR 40.1(c) and 28 U.S.C. § 636(c), on consent of the parties. *See* [#12, #14, #107].

Plaintiff is a freelance journalist and photographer and a resident of Denver, Colorado. *Am. Compl.* [#27] ¶ 14. Defendant City and County of Denver ("Denver") is a Colorado municipal corporation. *Id.* ¶ 15. The Denver Police Department ("DPD") is an agency of Defendant Denver. *Id.* Defendants Heather R. Jossi and Keith Valentine ("Valentine") were at all relevant times officers of the DPD. *Id.* ¶¶ 23, 24.

In the wake of George Floyd's death in Minneapolis, Minnesota at the hands of police officers, protests took place across the country. *Id.* ¶ 1. Plaintiff attended a protest in Denver, Colorado on June 1, 2020, gathering with other protestors at the Capitol Building around 8:00 p.m. *Id.* ¶¶ 73, 75. After 9:00 p.m., DPD officers began shooting foam batons, rubber bullets, and tear gas at the protestors, allegedly without warning. *Id.* ¶ 76.

In an effort to escape the tear gas, Plaintiff ran into a parking garage located at 13th Avenue and Lincoln Street but soon discovered that there was no viable exit. *Id.* ¶¶ 81-82. DPD officers ran after him. *Id.* ¶ 81. Plaintiff alleges that as he ran up the stairs of the garage, Defendant Valentine shot him in the face with PepperBall projectiles[2] at close range. *Id.* ¶ 83. Plaintiff alleges that Defendant Valentine hit him three times in the eye area. *Id.* Plaintiff states that he then put his hands up and laid down, unresisting. *Id.* ¶ 84. Plaintiff alleges that Defendant Valentine continued to fire PepperBalls at him while he was on the ground. *Id.* ¶ 86. Plaintiff was arrested for

---

[2] A PepperBall projectile is filled with oleoresin capsicum, known as "OC powder", an active ingredient in pepper spray which has an immediate incapacitating effect creating a burning sensation on skin and causing a person to struggle to breathe. *Am. Compl.* [#27] ¶¶ 35, 46, 47.

curfew violation and failure to obey a lawful order, charges which were later dismissed. *Id.* ¶¶ 105, 109.

Following his encounter with Defendants, Plaintiff's eye was bleeding, swollen shut, and bruised, and he could not open his eye. *Id.* ¶ 101. Plaintiff asserts that he continues to have problems with his eyesight, including light sensitivity. *Id.* ¶ 104. Following his arrest, Plaintiff was detained in jail where he claims that he did not receive medical attention for at least twelve hours. *Id.* ¶¶ 107, 108.

In the instant Motion [#91], Plaintiff asks the Court to exclude certain testimony of Dr. Brian Joondeph ("Joondeph"), Defendants' proffered medical expert. *Motion* [#91] at 1. Dr. Joondeph is an American Board of Ophthalmology certified ophthalmologist licensed by the State of Colorado who is currently a Partner at Colorado Retina Associates, PC. *Curriculum Vitae of Joondeph* [#95-1] at 2. In preparation for his testimony, Dr. Joondeph was provided the Complaint [#27] and Plaintiff's medical records. *Depo. of Joondeph* [#91-2] at 14:20-21. These materials included a jail booking photo of Plaintiff taken on June 2, 2020, which showed an injury to his eye. *Id.* at 15:4-5. Dr. Joondeph spent approximately two hours reviewing all records provided to him in this case and was asked to provide an "opinion on [Plaintiff's] eye injury, the care he received, [and] potential implications of [Plaintiff's] eye injury short-term [and] long term." *Id.* at 13:8-11, 21-23. After reviewing the records provided to him, Dr. Joondeph prepared a report explaining his findings. *See Joondeph Report* [#91-1]. In his report, Dr. Joondeph states:

> Such an appearance could be due to multiple possible mechanisms. These include a projectile as he alleged. It could also be due to blunt

> trauma as in a fist punch to the eye, falling and hitting the eye region, or being poked in the lid by some object like a stick.  The appearance of the injury doesn't imply a specific mechanism of injury[.]

*Id.* at 1.

In his Motion [#91], Plaintiff argues that this opinion testimony is based on speculation and conjecture, is not helpful to the jury, is not based on sufficient facts or data, and is not based on reasonably applying reliable principles and methods to the facts of this case.  *Motion* [#91] at 2.  In their Response [#95], Defendants argue that, by refusing to opine on specific causation, Dr. Joondeph is actually refusing to speculate and instead is grounding his opinions in his expertise and in his review of Plaintiff's medical records.  *Response* [#95] at 2.

## II.  Standard of Review

Rule 702 of the Federal Rules of Evidence provides that:

> A witness who is qualified as an expert may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Based on this rule, admission at trial of expert testimony requires a two-step analysis. *103 Invs. I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006).  "First, the court must determine whether the expert is qualified by 'knowledge, skill, experience, training, or education' to render an opinion."  *Id.* (citation omitted).  "Second, if the expert is sufficiently qualified, the court must determine whether the opinion is reliable under the principles set forth in *Daubert*."  *Id.* (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S.

579 (1993)).

The Court has a "gatekeeping role" in deciding whether to admit or exclude expert testimony and must determine that the testimony is both reliable and relevant. *Daubert*, 509 U.S. at 589, 597. An opinion is reliable if the reasoning or methodology of the expert is valid and "can be applied to the facts in issue." *Id.* at 592. When assessing reliability, "the court may consider several nondispositive factors: (1) whether the proffered theory can [be] and has been tested; (2) whether the theory has been subject to peer review; (3) the known or potential rate of error; and (4) the general acceptance of a methodology in the relevant scientific community." *103 Invs. I, L.P.*, 470 F.3d at 990 (citing *Daubert*, 509 U.S. at 593-94). These considerations are not exhaustive. Rather, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Ultimately, the test requires that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of any expert in the relevant field." *Id.* An opinion is relevant if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.*

Ultimately, the determination of whether expert testimony should be admitted is within the sound discretion of the trial court. *Vining v. Enter. Fin. Grp.*, 148 F.3d 1206, 1218 (10th Cir. 1998). "[T]he rejection of expert testimony is the exception rather than the rule." *O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d 917, 922 (D. Colo. 2017) (quoting Fed. R. Evid. 702 advisory committee's note). "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system . . . .

Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.*

While the proponent of the challenged testimony has the burden of establishing admissibility, its proffer is tested against the standard of reliability, not correctness; a proponent need only prove that "the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied." *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1221 (D. Colo. 2008) (citing *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999)).

### III.   Analysis

As stated, "[t]o determine whether an expert opinion is admissible, the district court performs a two-step analysis.  First, the court must determine whether the expert is qualified by 'knowledge, skill, experience, training, or education' to render an opinion. *See* Fed. R. Evid. 702.  Second, if the expert is sufficiently qualified, the court must determine whether the expert's opinion is reliable . . . ." *Milne v. USA Cycling, Inc.*, 575 F.3d 1120, 1134 (10th Cir. 2009) (quoting *103 Invs.*, 470 F.3d at 990).   Here, Plaintiff does not contest Dr. Joondeph's qualifications.   Therefore, the Court turns directly to the second prong of the Rule 702 analysis, i.e., whether Dr. Joondeph's opinion is reliable.

Rule 702 assigns to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the present case.  *Daubert*, 509 U.S. at 597.   In his Motion [#91], Plaintiff argues four grounds on which Dr. Joondeph's

opinion regarding other possible causes of injury should be excluded: (1) the opinion relies on speculation and conjecture; (2) the opinion is not helpful to the jury; (3) the opinion is not based on sufficient facts or data; and (4) the opinion is not based on reasonably applying reliable principles and methods to the facts of this case. *Motion* [#91] at 2. The Court addresses each argument in turn.

**A.      Speculation and Conjecture**

An expert's scientific testimony must be based on scientific knowledge, meaning "a grounding in the methods and procedures of science" based on actual knowledge, not "subjective belief or unsupported speculation." *Pritchett v. I-Flow Corp.*, No. 09-cv-02433-WJM-KLM, 2012 WL 1326406, at *2 (D. Colo. Apr. 17, 2012) (quoting *Daubert*, 509 U.S. at 590). While expert testimony must be grounded in facts, enabling a reasonable conclusion as opposed to mere speculation or conjecture, absolute certainty is not required. *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003).

Following his review of the records provided to him, Dr. Joondeph stated in his report that Plaintiff's injury "could be due to multiple possible mechanisms" including "a projectile as he alleged" but also "blunt trauma as in a fist punch to the eye, falling and hitting the eye region, or being poked in the lid by some object like a stick." *Joondeph Report* [#91-1] at 1. Dr. Joondeph stated that "[t]he appearance of the injury doesn't imply a specific mechanism of injury[.]" *Id.* Plaintiff argues that, by including these opinions in his report, Dr. Joondeph is speculating based only on his own conjecture and further argues that these alternate causes of Plaintiff's eye injury are not based on any evidence provided to him. *Motion* [#91] at 3.

The Court finds that Dr. Joondeph actually declined to speculate as to a specific cause of Plaintiff's injury. In his report, Dr. Joondeph does not state that Plaintiff's injury was caused by, for example, a fist punch to the eye. That statement would be speculative as no facts or evidence supporting that conclusion were provided to Dr. Joondeph. Rather, he is providing a non-exhaustive list of examples of other injuries which may present in the same manner as Plaintiff's. Plaintiff states in his Reply [#101] that, by his own admission, Dr. Joondeph was "simply guessing" that the injury could be attributed to many things. *Reply* [#101] at 2. However, the portion of Dr. Joondeph's deposition cited by Plaintiff in support does not, in fact, indicate that he admitted to guessing. Dr. Joondeph stated that he is "[not] concluding anything" and that instead he was acknowledging that "it could be a lot of things." *Depo. of Joondeph* [#91-2] at 17:23-24. The Court finds that, by declining to conclude as to the specific cause of Plaintiff's injury, Dr. Joondeph contemporaneously declined to speculate as to the cause of Plaintiff's injury. Thus, the Court finds that Dr. Joondeph's opinion as to possible causes of Plaintiff's injury is not speculative and is not based on his own conjecture.

To the extent that Plaintiff's first argument may have any merit, it goes to the possible weaknesses in the facts and data Dr. Joondeph relied on in coming to his opinions. Such weaknesses "go to the weight the jury should . . . give[ ][his] opinions[;] they [do] not render [his] testimony too speculative as a matter of law" to be admitted. *Cook v. Rockwell Int'l Corp.*, 80 F. Supp. 2d 1071, 1134 (D. Colo. 2006) (quoting *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995). Cross-examination is the appropriate method of confrontation at trial. *See Brookman v. Dillon Cos., LLC*, No. 19-

cv-03292-KLM, 2021 WL 3046915, at *5 (D. Colo. July 19, 2021) (finding that an assertion that expert testimony is speculative should be addressed with vigorous cross-examination).

B.     **Helpfulness to the Jury**

Plaintiff next argues that, by opining that Plaintiff's injury could be the result of multiple causes, Dr. Joondeph is of little help to the jury in fulfilling its duty as the trier of fact in this case. *Motion* [#91] at 4. Defendants counter by arguing that the phrase "blunt trauma" used in Dr. Joondeph's report is not lay terminology and therefore requires definition by an expert. *Response* [#95] at 4.

Under Rule 702(a), expert testimony in the form of an opinion is admissible if it "will help the trier of fact to understand the evidence or to determine a fact in issue[.]" Fed. R. Evid. 702(a). *See also Daubert*, 509 U.S. at 591 ("Rule 702 further requires that the evidence or testimony assist the trier of fact to understand the evidence or to determine a fact in issue.") (internal quotations omitted). In the Tenth Circuit, the touchstone of admissibility of expert testimony is its helpfulness to the trier of fact. *Wilson v. Muckala*, 303 F.3d 1207, 1219 (10th Cir. 2002). Expert testimony is excluded when the opinions or conclusions proffered are obvious, meaning that, when presented with the same evidence, a lay juror could come to the same conclusion or opinion without the help of an expert. *See United States. v. Gabaldon*, 389 F.3d 1090, 1099 (10th Cir. 2004) (finding that expert conclusion is utterly obvious and is not something for which expert testimony is needed). Additionally, expert testimony will be excluded if the expert fails to connect his or her specialized knowledge to the facts of the case. *Gianfrancisco v. Excelsior*

*Youth Ctrs., Inc.*, No. 10-cv-00991-PAB-KMT, 2012 WL 2890916, at *4 (D. Colo. July 16, 2012).

Here, the Court finds that Dr. Joondeph's opinion testimony could be helpful to the trier of fact. Lay jurors generally do not have specialized knowledge in the area of ophthalmology. A lay juror may not be able to come to an informed opinion as to the nature or cause of an eye injury by simply viewing a photo of the injury and reading Plaintiff's medical records. Viewing the same materials, a lay juror would not be able to opine on Plaintiff's prognosis and whether he is likely to suffer any short-term or long-term effects. Forming an opinion on possible causation of an eye injury of this type requires specialized knowledge. *Cf. Gabaldon*, 389 F.3d at 1099 (finding expert opinion to be too obvious to be helpful because the average juror would know that "a woman of [certain] size could be hit by a man smaller than [the defendant] in such a way as to not break her facial bones"). Further, terminology used in Dr. Joondeph's report such as "blunt trauma" requires an expert definition. *See Response* [#95] at 4. The Court finds that this is not a term which a lay juror would readily understand in this particular context without specialized knowledge. *See United States v. McDonald*, 933 F.2d 1519, 1522 (10th Cir. 1991) ("Rule 702 thus dictates a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject."). Any opinion or conclusion which could be drawn from the facts and data in this case is not obvious to a layman and is not likely to be reached without the help of an expert.

Dr. Joondeph has also sufficiently connected his specialized knowledge in the area of ophthalmology to the facts of this case. He utilized his specialized, scientific knowledge to form an opinion after reviewing Plaintiff's medical records, Plaintiff's jail booking photo showing his injury, the Complaint [#27], and examination reports from Denver Sheriff Health Services and UCHealth Eye Center. *Joondeph Report* [#91-1] at 1-2; *Depo. of Joondeph* [#91-2] at 14:20-21; 15:4. Because the cause of Plaintiff's injury is at issue in this case, specialized knowledge regarding potential causes of an eye injury like Plaintiff's is critical in helping the jury come to an informed verdict. Accordingly, the Court finds that this opinion meets the requirements of Rule 702(a).

## C.   Sufficient Facts or Data

Rule 702(b) requires that expert testimony be based on sufficient facts or data. Fed. R. Evid. 702(b). Expert testimony must be supported by "appropriate validation—i.e., 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590. Opinion evidence need not be admitted when it is "connected to existing data only by the *ipse dixit* of the expert."[3] *Rodgers v. Beechcraft Corp.*, 759 F. App'x 646, 658 (10th Cir. 2018) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). A court may find that there is just too great an analytical gap between the data and opinion offered for it to be reliable. *Id.*; *see also Gencorp Inc.*, 165 F.3d at 782 ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."). The district

---

[3] "Ipse dixit" is a Latin term which translates to "he himself said it." *Ipse Dixit*, Black's Law Dictionary (11th ed. 2019). In legal contexts, it refers to something asserted but not proved. *Id.*

court has wide discretion to determine whether these standards have been met. *Goebel v. Denver & Rio Grande W.R.R. Co.*, 346 F.3d 987, 990 (10th Cir. 2003).

Dr. Joondeph spent approximately two hours reviewing the records provided to him regarding this case, including Plaintiff's jail booking photo, the Complaint [#27], Plaintiff's medical records, and reports from exams performed by Denver Sheriff Health Services and UC Health Eye Center. *Joondeph Report* [#91-1] at 1; *Depo. of Joondeph* [#91-2] at 13:10-11, 18; 14:20-21; 15:4-5. His report summarizes findings from multiple eye exams, treatment received, and tests performed, all of which he used to come to his opinion about the potential causes of Plaintiff's injury. *See Joondeph Report* [#91-1] at 1-2. Courts have held that reviewing medical records is adequate data on which an expert may base a reliable opinion. *See, e.g.*, *Burton v. R.J. Reynolds Tobacco Co.*, 183 F. Supp. 2d 1308, 1313 (D. Kan. 2002) (finding that an examination of a patient's medical records is sufficient data on which to base a reliable diagnosis). Further, the Court finds that Dr. Joondeph's opinion as to possible causes of Plaintiff's injury is not so far removed from the data that he was provided to be rendered inadmissible. Thus, the Court finds that Dr. Joondeph's opinion testimony is based on sufficient facts and data. To the extent that Plaintiff calls into question the facts or data on which Dr. Joondeph based his opinion, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" are the appropriate means of attacking the opinion. *Daubert*, 509 U.S. at 596.

**D.     Reliable Principles and Methods**

Finally, Plaintiff argues that Dr. Joondeph's opinion is not based on reasonably applying reliable principles and methods to the facts of this case. *Motion* [#91] at 2. In his deposition, Dr. Joondeph stated that he "analyz[ed], medically, [Plaintiff's] appearance and provid[ed] a differential diagnosis." *Depo. of Joondeph* [#91-2] at 20:4-6. Differential diagnosis refers to the process by which a physician "rule[s] in all scientifically plausible causes or the injury" then "rules out the least plausible causes of injury until the most likely cause remains." *Hollander v. Sandoz Pharms. Corp.*, 289 F.3d 1193, 1209 (10th Cir. 2002) (quoting *Glastetter v. Novartis Pharms. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001)). The Court finds that the application of these principles and methods adequately satisfies the requirement of Fed. R. Evid. 702(d).

Generally, the district court should focus on the experts' methodology and not the conclusions generated. *Hollander*, 289 F.3d at 1205; *see also Daubert*, 509 U.S. at 595. Numerous courts, including this one, have "approved opinions based on differential diagnosis to show general causation, despite the absence of conclusive causal evidence." *Pritchett*, 2012 WL 1326406, at *6 (quoting *McClellan v. I-Flow Corp.*, 710 F. Supp. 2d 1092, 1104 (D. Or. 2010)). Expert testimony relating to general causation can be admitted when based on "a reliable differential diagnosis and [when it] reliably flows from the underlying facts of the case." *Id.* (quoting *Yarchak v. Trek Bicycle Corp.*, 208 F. Supp. 2d 470, 499 (D.N.J. 2002)). The proponent of the testimony need neither prove that the expert is indisputably correct nor show that the expert's theory is generally accepted in the scientific community. *Truck Ins. Exch. v. MagneTek, Inc.*, 360 F.3d 1206, 1210 (10th Cir. 2004) (citing *Gencorp Inc.*, 165 F.3d at 781). Instead, the

proponent of the testimony must show that the method employed by the expert in reaching the offered conclusion or opinion is scientifically sound.  *Id.*

The Court recognizes that neither Dr. Joondeph's Report [#91-1] nor his Deposition [#91-2] suggest that he performed a complete differential diagnosis.  There is no indication that Dr. Joondeph ruled in *all* scientifically plausible causes of Plaintiff's injury, then ruled out less plausible causes until left with only the most likely cause.  However, the Court finds that Dr. Joondeph's methods of reviewing the records provided to him are nonetheless scientifically sound.  The Court acknowledges that it is common for trained experts to extrapolate from existing data.  *Gencorp Inc.*, 165 F.3d at 782.  Further, because Dr. Joondeph in fact did not reach an ultimate conclusion about the cause of Plaintiff's injury and instead averred that "[s]uch an appearance could be due to multiple possible mechanisms," the Court finds that the underlying methodology to arrive at that conclusion, or lack thereof, is adequate.  If Plaintiff disputes this methodology or believes it to be scientifically unsound, that is appropriate fodder for cross-examination as it goes to the weight, not the admissibility, of Dr. Joondeph's testimony.  *See Tingey v. Radionics*, 193 F. App'x 747, 767 (10th Cir. 2006) (finding that disputes as to faults in an expert's methodology go to the weight, not the admissibility of the testimony).

For the foregoing reasons, the Court finds that the expert testimony proffered by Defendants is not speculative and is not based on Dr. Joondeph's own conjecture, could be helpful to the trier of fact, is based on sufficient facts or data, and is based on reasonably applying reliable principles and methods to the facts of this case.  Therefore, the expert testimony is not inadmissible under Rule 702.

### IV.  Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion [#91] is **DENIED**.

Dated: June 20, 2023

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge