IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-03388-KAS

AMBROSE CRUZ,

      Plaintiff,

v.

CITY AND COUNTY OF DENVER, COLORADO,
HEATHER R. JOSSI, #07059, and
KEITH VALENTINE,

      Defendants.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

      This matter is before the Court on Defendants' **Motion to Limit Testimony of Plaintiff's Retained Experts Norman Stamper and Edward Maguire** [#89] (the "Motion"). Plaintiff filed a Response [#97] in opposition to the Motion [#89], and Defendants filed a Reply [#102]. The Court has reviewed the briefs, the entire case file, and the applicable law. For the reasons set forth below, the Motion [#89] is **GRANTED in part** and **DENIED in part**.[1]

## I. Background

      Plaintiff is a freelance journalist and photographer and a resident of Denver, Colorado. *Am. Compl.* [#27] ¶ 14. Defendant City and County of Denver ("Denver") is a

---

[1] This case has been referred to the undersigned for all purposes pursuant to D.C.COLO.LCivR 40.1(c) and 28 U.S.C. § 636(c), on consent of the parties. *See* [#12, #14, #107]; *Reassignment* [#111].

Colorado municipal corporation. *Id.* ¶ 15. The Denver Police Department ("DPD") is an agency of Defendant Denver. *Id.* Defendants Heather R. Jossi ("Jossi") and Keith Valentine ("Valentine") (collectively, "Defendant Officers") were at all relevant times officers of the DPD. *Id.* ¶¶ 23, 24.

In the wake of George Floyd's death in Minneapolis, Minnesota, at the hands of police officers, protests took place across the country. *Id.* ¶ 1. Plaintiff attended a protest in Denver, Colorado on June 1, 2020, gathering with other protestors at the Capitol Building around 8:00 p.m. *Id.* ¶¶ 73, 75. After 9:00 p.m., DPD officers began shooting foam batons, rubber bullets, and tear gas at the protestors, allegedly without warning. *Id.* ¶ 76.

In an effort to escape the tear gas, Plaintiff ran into a parking garage located at 13th Avenue and Lincoln Street but soon discovered that there was no viable exit. *Id.* ¶¶ 81-82. DPD officers ran after him. *Id.* ¶ 81. Plaintiff alleges that as he ran up the stairs of the garage, Defendant Valentine shot him in the face with PepperBall projectiles at close range.[2] *Id.* ¶ 83. Plaintiff alleges that Defendant Valentine hit him three times in the eye area. *Id.* Plaintiff states that he then put his hands up and laid down, unresisting. *Id.* ¶ 84. Plaintiff alleges that Defendant Valentine continued to fire PepperBalls at him while he was on the ground. *Id.* ¶ 86. Plaintiff was arrested for curfew violation and failure to obey lawful orders, charges which were later dismissed. *Id.* ¶¶ 105, 109.

---

[2]  A PepperBall projectile is filled with oleoresin capsicum, known as "OC powder", an active ingredient in pepper spray which has an immediate incapacitating effect creating a burning sensation on skin and causing a person to struggle to breathe. *Am. Compl.* [#27] ¶¶ 35, 46, 47.

In the instant Motion [#89], Defendants ask the Court to exclude certain testimony of Norman Stamper ("Stamper") and Edward Maguire ("Maguire"), two of Plaintiff's proffered police practices experts focused on police response to protests. Mr. Stamper is a retired law enforcement officer with over three decades of experience on the force. *Stamper Report* [#89-2] at 1. He worked with the San Diego Police Department for twenty-five years, during which he held a variety of positions spanning from Sergeant to Executive Assistant to the Chief of Police. *Id.* Mr. Stamper served as the Chief of Police for the City of Seattle, Washington from 1994 to 2000, during which time he oversaw the police response to two dozen protests, including the World Trade Organization protests of 1999 which involved approximately 40,000-60,000 protestors. *Id.* at 1-2.

Dr. Maguire is a professor of criminology and criminal justice at Arizona State University. He holds a Ph.D. in criminal justice from the State University of New York at Albany and has been studying, teaching, training, aiding, and collaborating with police for over twenty-five years. *Maguire Report* [#89-3] at 1. Dr. Maguire's work focuses primarily on policing and violence, more specifically policing crowds like those at protests. *Id.* Dr. Maguire has published over 115 scientific journal articles on various criminal justice issues and has authored or edited seven books or monographs on the same topics. *Id.* In recent years, Dr. McGuire's research and consulting has focused on crowd management and police responses to protests. *Id.* at 2. He has traveled to Ohio, Arizona, and New York as well as internationally to assess police responses to protests in the wake of George Floyd's death. *Id.*

3

In their Motion [#89], Defendants argue that some of the expert testimony offered by Mr. Stamper and Dr. Maguire does not "fit" with Plaintiff's claims, meaning that Plaintiff's retained experts offer "extensive and overly broad expert opinions" which are "wholly unrelated or even relevant to Plaintiff's actual claims or the facts surrounding those claims." *Motion* [#89] at 2, 5. Defendants also argue that, because Plaintiff is a member of the arrest class certified in the case of *Epps v. City and County of Denver*, No. 20-cv-01878-RBJ, and because the claims of the arrest class have not yet been resolved,[3] it is improper for Plaintiff to litigate issues in the present case which are otherwise properly considered as part of the arrest class action. *Id.* at 12. Plaintiff counters by asserting that, through the present Motion [#89], Defendants are attempting to reargue matters raised in their pending summary judgment brief and to dispose of Plaintiff's claim for municipal liability against Defendant Denver, pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978); *Response* [#97] at 2-3. Plaintiff further argues that the testimony of Mr. Stamper and Dr. Maguire is relevant because their opinions regarding DPD's policies, widespread practices, and failures in training and supervision explain how the events underlying Plaintiff's claim occurred and are closely related to Plaintiff's eye injury. *Id.* at 12-13. Finally, Plaintiff avers that Defendants' argument relating to the pending class action case is misguided because, in contrast to

---

[3] The Court notes that, since the present Motion [#89] was filed, the *Epps* case has been partially resolved through settlement. *See Order Granting Final Approval of Class Action Settlement* [#502, Case No. 20-cv-01878-RBJ]; *Final Judgment* [#503] (directing "entry of final judgment as to one or more, but fewer than all, claims or parties in this case"). Additionally, the Tenth Circuit Court of Appeals recently resolved an interlocutory appeal by affirming the district court's order denying summary judgment to three law enforcement officers. *Tenth Circuit Opinion and Judgment* [#499]; *see also Order* [#505] (entered December 15, 2023, regarding the remaining issues in the *Epps* case).

*Epps*, the present case is not about whether Denver's curfew was unconstitutionally enforced, and the proffered expert opinions have nothing to do with the curfew or enforcement of the curfew. *Id.* at 13-15.

## II. Standard of Review

Rule 702 of the Federal Rules of Evidence provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Based on this rule, admission at trial of expert testimony requires a two-step analysis. *103 Invs. I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). "First, the court must determine whether the expert is qualified by 'knowledge, skill, experience, training, or education' to render an opinion." *Id.* (citation omitted). "Second, if the expert is sufficiently qualified, the court must determine whether the opinion is reliable under the principles set forth in *Daubert*." *Id.* (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)).

The Court has a "gatekeeping role" in deciding whether to admit or exclude expert testimony and must determine that the testimony is both reliable and relevant. *Daubert*, 509 U.S. at 589, 597. An opinion is reliable if the reasoning or methodology of the expert is valid and "can be applied to the facts in issue." *Id.* at 593. When assessing reliability, "the court may consider several nondispositive factors: (1) whether the proffered theory

5

can [be] and has been tested; (2) whether the theory has been subject to peer review; (3) the known or potential rate of error; and (4) the general acceptance of a methodology in the relevant scientific community." *103 Invs. I, L.P.*, 470 F.3d at 990 (citing *Daubert*, 509 U.S. at 593-94). These considerations are not exhaustive. Rather, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Ultimately, the test requires that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of any expert in the relevant field." *Id.* An opinion is relevant if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 588, 593.

Ultimately, the determination of whether expert testimony should be admitted is within the sound discretion of the trial court. *Vining v. Enter. Fin. Grp.*, 148 F.3d 1206, 1218 (10th Cir. 1998). "[T]he rejection of expert testimony is the exception rather than the rule." *O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d 917, 922 (D. Colo. 2017) (quoting Fed. R. Evid. 702 advisory committee's note to the 2000 amendments). "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system . . . . Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.*

While the proponent of the challenged testimony has the burden of establishing admissibility, its proffer is tested against the standard of reliability, not correctness; a proponent need only prove that "the witness has sufficient expertise to choose and apply

6

a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied." *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1221 (D. Colo. 2008) (citing *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999); *Daubert*, 509 U.S. at 595).

### III. Analysis

In their Motion [#89], Defendants argue that the opinions of Mr. Stamper and Dr. Maguire should be excluded because they are "generalized notions about Denver's overall response to the protests, supported by unrelated and dissimilar events involving individuals other than Plaintiff." *Motion* [#89] at 6. Plaintiff argues that the opinions of Mr. Stamper and Dr. Maguire are "central to Plaintiff's claims that [Defendant] Denver's policies, customs, and failure to train caused the constitutional violations by the Defendants in this case." *Response* [#97] at 4. In other words, the parties dispute whether Mr. Stamper's opinions and Dr. Maguire's opinions are relevant to this litigation.

"Relevant evidence" is defined as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Daubert*, 509 U.S. at 587 (quoting Fed. R. Evid. 401). Expert testimony, like all evidence, must be relevant to be admissible. Expert testimony which does not relate to any issue in the case is not relevant and thus not helpful to the trier of fact, another touchstone of expert testimony admissibility. *Id.* at 591; *see also* Fed. R. Evid. 702(a) (an expert may testify in the form of an opinion if "the expert's scientific, technical, or other specialized knowledge will help

the trier of fact to understand the evidence or to determine a fact in issue[.]"). "Relevant expert testimony must logically advance [ ] a material aspect of the case and be sufficiently tied to the facts of the case." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011). It is within the province of the trial judge to ensure that an expert's testimony "rests on a reliable foundation and is relevant to the task at hand." *Daubert,* 509 U.S. at 597.

The Court notes that barring expert opinion solely on the basis of relevance by pretrial motion is only appropriate in the clearest of circumstances. Often, courts are unable to determine before the trial whether evidence may be at least marginally relevant to a claim or defense asserted at the trial. *See Wilkins v Kmart Corp.*, 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007) (stating, "a court is almost always better situated during the actual trial to assess the value and utility of evidence"). Thus, courts typically make such rulings in the context of the trial itself. Here, therefore, the Court only grants the present Motion [#89] to the extent that a given opinion's irrelevance to the claims asserted by Plaintiff is apparent. To the extent that an opinion *may* have at least marginal relevance, the Court finds prudence requires denial of the Motion [#89] at this time. Defendants may again raise any relevancy argument in the context of trial to the extent they deem such objections appropriate.

## A.    Mr. Stamper's Opinions

Specifically, Defendants argue that the following opinions made by Mr. Stamper should be excluded:

1) Opinions related to the "major events" that occurred during the protests in Denver. *Stamper Report* [#89-2] at 4-6 ¶¶ 12-17.

8

2) Opinions related to an alleged "widespread practice and custom of failing to give dispersal orders or audible dispersal orders prior to use of force." *Id.* at 6-32 ¶¶ 19, 21-57.

3) Opinions related to an alleged "indiscriminate and inappropriate use of chemical munitions such as tear gas." *Id.* at 32-39 ¶¶ 58-78.

4) Opinions related to events other than those involving Plaintiff, to support an alleged "indiscriminate and inappropriate use of pepperballs and inadequate training." *Id.* at 39-48 ¶¶ 80(b)-(i), 81.

5) Opinions related to training of less lethal weapons other than pepperballs. *Id.* at 48-49 ¶¶ 82(b)-(f), 82(i)-(j), 83(a).

6) Opinions related to the alleged dangerous kittling [sic] incident on May 31, 2020. *Id.* at 50-53 ¶¶ 85-90.

7) Opinions related to alleged "inappropriate use of 40mm launchers and other projectiles and inadequate training." *Id.* at 53-58 ¶¶ 91-99.

8) Opinions related to alleged "inappropriate use of pepper spray and inadequate training." *Id.* at 58-64 ¶¶ 100-110.

9) Opinions related to alleged "inappropriate use of flash bangs, stinger grenades, or other explosives and failure to train." *Id.* at 64-70 ¶¶ 111-118.

10) Opinions related to Denver's responsibility for the actions of mutual aid agencies since none were involved respecting Plaintiff. *Id.* at 85-87 ¶¶ 153-157.

11) Opinions related to an alleged failure to prepare for the protests. *Id.* at 89 ¶¶164-165.

12) Opinions related to alleged "inappropriate delegation of weapon assignment to officer discretion and failure of supervision." *Id.* at 89-90 ¶ 166.

13) Opinions related to the findings of the Office of Independent Monitor ("OIM"). *Id.* at 90-91 ¶¶ 167-173.

*Motion* [#89] at 7. Defendants assert that, because these opinions venture beyond the

scope of Defendants' encounter with Plaintiff and into the totality of the DPD's response

to the George Floyd protests over the span of several days, they are essentially irrelevant to the present case.

### 1.      Opinions to be Excluded

The Court finds that some of the opinions offered by Mr. Stamper are not sufficiently related to the underlying facts of this case and are therefore outside the scope of permissible expert opinion testimony.

### a.      Opinions #4

First, the Court finds the Mr. Stamper's "opinions related to events other than those involving Plaintiff" used to support an alleged "indiscriminate and inappropriate use of pepperballs and inadequate training" are not sufficiently tied to the facts of the present case and thus should be excluded. *See Stamper Report* [#89-2] at 40-47 ¶¶ 80(b)-(i). These opinions were formed based on video footage from protests occurring on May 28 and May 30, 2020. *See id.* The protest during which Plaintiff was injured, at issue in this case, took place on June 1, 2020. *Am. Compl.* [#27] ¶ 73. The Court finds that these opinions regarding DPD's actions towards other protestors besides Plaintiff, which occurred on different days than Plaintiff's encounters, have little bearing on the present case and are, therefore, irrelevant and will be excluded.

### b.      Opinions #6

Next, the Court finds that Mr. Stamper's opinions regarding the "dangerous kettling incident," which occurred on May 31, 2020, also has little bearing on the present case. *See Stamper Report* [#89-2] at 50-53 ¶¶ 85-90. This incident occurred on May 31, 2020, but the protest which Plaintiff attended and is the subject of the present case took place

on June 1, 2020. *Am. Compl.* [#27] ¶ 73. While the Amended Complaint [#27] mentions kettling (a specific method of crowd control) several times, the factual allegations as to the at-issue encounter between Defendants and Plaintiff on June 1 are void of any assertion that kettling was used by the DPD during the protest that Plaintiff attended. *See id.* ¶¶ 73-113. Mr. Stamper's Report [#89-2] states that this kettling incident occurred "in front of Cathedral Basilica of the Immaculate Conception, on Colfax between Logan and Pennsylvania." *Stamper Report* [#89-2] at 50 ¶ 85. The Report [#89-2] goes on to describe a video shot by Johnathen Duran, someone who has never been named in the present case, in which "Captain Redfearn and Lt. Williams," along with other DPD officers, used less-lethal munitions to control protestors gathered at the Cathedral. *Id.* In sum, this alleged kettling incident took place on a different date than the protest that is the subject of the present case, and the Court finds no indication that Plaintiff was present for this incident. Accordingly, the Court finds that these opinions are not sufficiently relevant to Plaintiff or his claims. Thus, these opinions are irrelevant and will be excluded.

### c.   Opinions #7

Next, Defendants aver that Mr. Stamper's opinions related to alleged "inappropriate use of 40mm launchers and other projectiles and inadequate training" are not relevant to this case because Plaintiff's claim involves the use of a PepperBall launcher against him, not other less-lethal munitions. *Motion* [#89] at 7. The Court agrees. In his Report [#89-2], Mr. Stamper describes how, during the protests, "there were many press reports of individuals who were seriously injured by inappropriate use of 40mm launchers and other projectiles" and how "'foam batons' fired from a 40mm launcher can

cause loss of vision, broken bones, brain damage, even death." *Stamper Report* [#89-2] at 53 ¶ 91. Nowhere in the Amended Complaint [#27] does Plaintiff allege that the Defendant Officers used a 40mm launcher against him or that 40mm launchers were used in any way during the June 1, 2020 encounter, which is the subject of this action. Perhaps more importantly, the expert opinion Mr. Stamper offers regarding the DPD's use of 40mm launchers is based on three incidents, which all occurred on May 31, 2020, during which three individuals named Jonathen Duran, Joe Deras, and Zach Packard were shot by DPD officers with various projectiles. *Stamper Report* [#89-2] at 53-58 ¶¶ 92-99. These individuals do not appear to have any relation to the present case or the allegations in Plaintiff's Amended Complaint [#27]. Accordingly, the Court finds that expert opinion testimony regarding the use of less-lethal munition not used in the present case and involving individuals not related to the present case is not "relevant to the task at hand" and thus is not permissible. *See Daubert*, 509 U.S. at 597. Therefore, these opinions will be excluded.

### d.  Opinions #8

Defendants argue that Mr. Stamper's opinions related to alleged "inappropriate use of pepper spray and inadequate training" are also insufficiently related to the facts of this case to be allowed. *Motion* [#89] at 7. Again, the Amended Complaint [#27] includes no factual allegations that Plaintiff was pepper sprayed at any point during his encounter with Defendant Officers on June 1, 2020. Perhaps more persuasively, the facts that Mr. Stamper relied upon in coming to his conclusion relating to DPD's use of pepper spray have no bearing on the present case. Mr. Stamper describes a May 30, 2020 incident in

which Defendant Jossi pepper sprayed a protestor, not Plaintiff, who was holding a cell phone and filming her. *Stamper Report* [#89-2] at 58-59 ¶ 102. Mr. Stamper describes body-worn camera footage that shows an unnamed officer deploying pepper spray towards unnamed individuals on May 28, 2020. *Id.* at 59 ¶ 103. Mr. Stamper next details an incident that occurred on May 29, 2020, during which another unnamed officer deployed pepper spray at an unnamed individual. *Id.* at 59 ¶ 104. Mr. Stamper finally describes five incidents, all occurring on May 30, 2020, in which numerous unnamed officers deployed pepper spray at various unnamed individuals and one named protestor, Stanford Smith. *Id.* at 60-63 ¶¶ 105-109. All these occurrences of DPD officers deploying pepper spray at protestors occurred on different days than the protest in which Plaintiff was involved and which is the subject of the present case. Therefore, the Court finds these opinions are not sufficiently tied to the facts of the instant case. *See Garcia*, 635 F.3d at 476 ("Relevant expert testimony must . . . be sufficiently tied to the facts of the case[.]") (internal quotations omitted). Therefore, these opinions will be excluded.

### e.   Opinions #9

Defendants next argue that Mr. Stamper's opinions related to alleged "inappropriate use of flash bangs, stinger grenades, or other explosives and failure to train" are similarly outside of the scope of the present litigation and accordingly should be barred. *Motion* [#89] at 7. The factual allegations in the Amended Complaint [#27] related to Plaintiff's claims are devoid of any mention of flashbang or stinger grenades. Though Plaintiff alleges that "flashbang grenades and Stinger grenades were used repeatedly during the protests, frequently thrown into crowds" and that such use "directly caused

injury to protestors," *Am. Compl.* [#27] ¶ 120, Plaintiff fails to connect this general allegation to the protest on June 1, 2020, during which *he* was allegedly injured. Mr. Stamper similarly fails to make such a connection in his Report [#89-2]. The facts upon which Mr. Stamper apparently bases his opinion regarding the use of these devices came from the declarations of "Fitouri, Parkins, Deras, and Sannier."[4] *Stamper Report* [#89-2] at 64 ¶ 111. According to Mr. Stamper, these individuals indicated that these devices were used by DPD on numerous occasions, including on May 29, 2020, at the intersection of Colfax and Broadway, on May 30, 2020, at the intersection of Lincoln and Colfax, and on May 31, 2020, at the intersection of Colfax and Washington. *Id.* None of these dates or locations are related to the factual allegations in Plaintiff's Amended Complaint [#27]. The Court cannot permit an expert to proffer opinion testimony which is based on facts not relevant to the present case. Mr. Stamper's opinions regarding DPD's use of flashbangs, Stinger grenades, and other explosive devices are based on facts unrelated to the present case and thus are not permissible. *See Daubert*, 509 U.S at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.") (internal quotation marks and citation omitted). Therefore, these opinions will be excluded.

### f.    Opinions #10

Defendants next argue that Mr. Stamper's opinions related to Denver's responsibility for the actions of mutual aid agencies are likewise irrelevant "since none

---

[4] The Court notes that the parties agreed to designate the discovery produced in *Epps v. City and County of Denver* (consolidated with *Fitouri v. City and County of Denver*), No. 1:20-cv-01878-RBJ, as discovery for the purpose of this case as well. *Scheduling Order* [#38] at 9.

were involved respecting Plaintiff." *Motion* [#89] at 7. The Court agrees. Plaintiff makes several references to mutual-aid agencies in his Amended Complaint [#27], largely explaining how DPD requested assistance in responding to the protests from agencies within its mutual-aid network. *Am. Compl.* [#27] ¶¶ 18-22. However, the actions of DPD's mutual-aid network are not at issue in the instant case, and the factual allegations relating to Plaintiff's encounter with Defendant Officers make no mention of mutual aid involvement or allegations against a member of a mutual-aid partner. At all relevant times, the Defendant Officers in this case were employees of the DPD, not an agency, and there is no clear indication that anyone else with specific involvement in the at-issue incident was a member of a mutual-aid network. *See Am. Compl.* [#27] ¶¶ 23-24. Further, in support of this opinion, Mr. Stamper references video and reports of members of non-DPD agencies, but none of these individuals have any relation to this case. *Stamper Report* [#89-2] at 86 ¶ 154. Again, the Court finds that Mr. Stamper impermissibly relies on facts outside the scope of this case in forming his opinion relating to the actions of mutual-aid agencies. *See Garcia*, 635 F.3d at 476 (relevant evidence must be sufficiently tied to the facts of the case). Therefore, these opinions will be excluded.

### g.    Conclusion

In sum, the Motion [#89] is **granted**. For the reasons discussed above, the Court finds that the following opinions offered by Mr. Stamper should be excluded because they are not sufficiently related to any issue in the case, are not relevant, and are not helpful to the trier of fact:

4) Opinions related to events other than those involving Plaintiff, to support an alleged "indiscriminate and inappropriate use of pepperballs and inadequate training." *Stamper Report* [#89-2] at 39-48 ¶¶ 80(b)-(i), 81.

6) Opinions related to the alleged dangerous kittling [sic] incident on May 31, 2020. *Id.* at 50-53 ¶¶ 85-90.

7) Opinions related to alleged "inappropriate use of 40mm launchers and other projectiles and inadequate training." *Id.* at 53-58 ¶¶ 91-99.

8) Opinions related to alleged "inappropriate use of pepper spray and inadequate training." *Id.* at 58-64 ¶¶ 100-110.

9) Opinions related to alleged "inappropriate use of flash bangs, stinger grenades, or other explosives and failure to train." *Id.* at 64-70 ¶¶ 111-118.

10) Opinions related to Denver's responsibility for the actions of mutual aid agencies since none were involved respecting Plaintiff. *Id.* at 85-87 ¶¶ 153-157.

## 2.    Opinions Permissible at this Juncture

As for the remainder of Mr. Stamper's opinions, the Court finds that questions regarding their admissibility are best left for trial, at which time the Court will have greater context and be better positioned to assess the opinions' relevance and utility. At this juncture, those opinions are not so obviously disconnected from the facts of the present case to render them inadmissible. *See Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1083 (D. Colo. 2006) ("Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions.") (quoting *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994)).

For example, evidence of widespread practices of failing to give dispersal orders and indiscriminate use of chemical munitions such as tear gas appear relevant to the

facts of the present case because Plaintiff alleges that he was tear gassed while protesting on June 1, 2020, and that no warnings or orders were given prior to deploying the tear gas. *Am. Compl.* [#27] ¶¶ 76-77. Therefore, evidence of these widespread practices arguably makes it more likely that the facts of consequence alleged in the Amended Complaint [#27] may be true. As another example, the Office of Independent Monitor Report, upon which Mr. Stamper bases some of his opinions, appears to have been compiled after an investigation into the DPD's use of force during the protests in general. *Am. Compl.* [#27] ¶ 119. Because the June 1, 2020 protest Plaintiff attended would have fallen within the Report's purview, the Report is not so obviously disconnected from the facts of the present case.

Accordingly, Defendants may re-assert their relevance objections during trial regarding Mr. Stamper's following opinions concerning:

(1) the "major events" that occurred during the protests;

(2) an alleged "widespread practice and custom of failing to give dispersal orders or audible dispersal orders prior to the use of force";

(3) an alleged "indiscriminate and inappropriate use of chemical munitions such as tear gas;

(5) training of less lethal weapons other than pepperballs;

(11) an alleged failure to prepare for the protests;

(12) an alleged "inappropriate delegation of weapon assignment to officer discretion and failure of supervision"; and

(13) the findings of the Office of Independent Monitor.

Accordingly, the Motion [#89] is **denied** to the extent that Defendants seek to exclude the remaining Stamper opinions, Numbers (1), (2), (3), (5), (11), (12), and (13), as identified in Defendants' Motion [#89] at 6-7.

**B.     Dr. Maguire's Opinions**

Defendants argue that the following opinions of Dr. Maguire should be excluded:

1) Opinions related to allegedly "insufficient and outdated training in crowd management and control." *Maguire Report* [#89-3] at 3-11 ¶¶ 11-25, 28.

2) Opinions related to training related to 40mm launchers and "high-risk explosive devices." *Id.* at 11 ¶¶ 26-27.

3) Opinions related to alleged "insufficient reliance on crowd management strategies." *Id.* at 14-18 ¶¶ 41-52.

4) Opinions related to alleged "use of inappropriate crowd control tactics." *Id.* at 18-23 ¶¶ 53-56, 58-63, 65-67.

5) Opinions related to alleged "insufficient internal controls for addressing officer misconduct." *Id.* at 23-25 ¶¶ 68-72.

6) Opinions related to Denver's overall response to the protests. *Id.* at 30-31 ¶¶ 95-99.

*Motion* [#89] at 8. Defendants argue again that these opinions are "generalized notions about Denver's overall response to the protests, supported by unrelated and dissimilar events involving individuals other than Plaintiff." *Id.* at 6.

**1.     Opinions to be Excluded**

**a.     Opinions #2**

Dr. Maguire's opinion related to training on 40mm launchers and "high-risk explosive devices" is not sufficiently tied to the facts of this case. In coming to this opinion,

Dr. Maguire relied on the OIM report. *Maguire Report* [#89-3] at 11 ¶¶ 26-27. As previously stated, this report appears to have been generated following an investigation into the DPD's overall use of force during the protests; however, the DPD's overall use of force is not at issue in this case. Again, the Amended Complaint [#27] includes no allegations that 40mm launchers or any other "high-risk explosive devices" were deployed against Plaintiff or used during the June 1, 2020 protest that Plaintiff attended. Therefore, the Court finds that Dr. Maguire's opinion regarding the use and training of these devices is not related to the underlying allegations of this case. *See Garcia*, 635 F.3d at 476 (stating that relevant evidence must be sufficiently tied to the facts of the case).

Accordingly, the Motion [#89] is **granted** to the extent that the Court finds that the opinions offered by Dr. Maguire with respect to training related to 40mm launchers and high-risk explosive devices must be excluded.

### 2.      Opinions Permissible at this Juncture

The Court finds that the remaining opinions by Dr. Maguire to which Defendants object are more appropriately addressed at trial because their admissibility will likely turn on the evidence presented and the foundation that is laid. As mentioned above, aside from the opinions excluded by this Order, Defendants may re-raise at trial relevance objections to any of Dr. Maguire's proffered opinion testimony if they believe the proper foundation to establish relevancy has not been laid. Depending on the Court's ruling on any potential objections, Defendants always have the tool of vigorous cross-examination available to them. *See Daubert*, 509 U.S. at 596.

19

Accordingly, the Motion [#89] is **denied** to the extent that Defendants seek to exclude the remaining opinions ((1), (3), (4), (5), and (6)) offered by Dr. Maguire.

## C.   Additional Opinions for Both Experts

Defendants further argue that several other opinions are excludable as irrelevant for reasons beyond a lack of "fit." *Motion* [#89] at 8.

### 1.   Opinions Regarding Body Worn Cameras

First, "both experts opine on the alleged failure to properly and consistently deploy body worn cameras." *Id.* (citing *Stamper Report* [#89-2] at 76-80 ¶¶ 133-146; *Maguire Report* [#89-3] at 25-27 ¶¶ 73-80). Defendants argue that this testimony is irrelevant because "whether a police officer uses a body worn camera does not establish whether the underlying event violated anyone's constitutional rights." *Motion* [#89] at 8. Plaintiff acknowledges that this policy by itself is not unconstitutional; however, he argues that this testimony goes to his municipal liability claim under *Monell* against Defendant Denver. *Response* [#97] at 11-12.

Since *Monell*, courts have required a plaintiff seeking to impose liability on a municipality to identify a municipal "policy" or "custom" that caused the plaintiff's injury. *Bd. of Cnty. Comm'r of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997). Plaintiff argues that Defendant Denver's body-worn camera policy caused Plaintiff's injuries because Defendants "Valentine and Jossi knew they would not be held accountable for their use of force on Plaintiff." *Response* [#97] at 11-12. While Plaintiff's argument seems speculative, this argument is more appropriately addressed at trial. The Court finds that the experts' opinions regarding the alleged failure to properly and consistently deploy

body-worn cameras are sufficiently relevant at this juncture because Plaintiff alleges that, per DPD policy, Defendant Officers did not deploy body-worn cameras during the June 1, 2020 protest.

### 2.   Opinions Regarding Use of Force Reports, Failure to Discipline, and Approval of Use of Force

Next, the Court declines to exclude the following three opinions because they *may* be relevant to Plaintiff's *Monell* theories. Those opinions concern: the alleged failure of officers to complete use of force reports, *see Motion* [#89] at 9 (citing *Stamper Report* [#89-2] at 71-76 ¶¶ 119-32; *Maguire Report* [#89-3] at 26-29 ¶¶ 81-88), Denver's alleged failure to appropriately discipline its officers related to their actions during the protests, *see id.* at 10 (citing *Stamper Report* [#89-2] at 80-85 ¶¶ 147-52; *Maguire Report* [#89-3] at 20, 23-24, 30 ¶¶ 57, 68 & 92-94), and the alleged leadership approval of officers' use of force, *see Motion* [#89] at 10-11 (citing *Stamper Report* [#89-2] at 87-89 ¶¶ 158-63). While the relationship between some of these opinions and the facts of Plaintiff's case are more tenuous than others, the opinions are sufficiently anchored to Plaintiff's *Monell* claims against the City and County of Denver such that their exclusion at this time would be premature. The viability of the legal theories which these opinions purportedly support (such as Plaintiff's theory regarding ratification) are better addressed by dispositive motion.

### 3.   Opinions Regarding Arrest Procedures

Finally, Defendants seek exclusion of Dr. Maguire's opinions on arrest procedures and the arrest of Plaintiff. *Motion* [#89] at 11-12 (citing *Maguire Report* [#89-3] at 29-30 ¶¶ 89-92). Defendants state that the pendency of the arrest class action (*Epps*) and

Plaintiff's membership in the class renders opinions on arrest procedures inappropriate for this case because they are otherwise properly considered as part of the *Epps* arrest class action. *Id.* at 12. The Court is not convinced that these opinions should be excluded at this time. Although the constitutionality of Plaintiff's arrest may be at issue in the *Epps* case, the circumstances surrounding Plaintiff's arrest, including whether excessive force was used to effectuate that arrest, are at issue in this case. Therefore, Dr. Maguire's opinions on arrest procedures *may* be relevant to the claims in this lawsuit.

Accordingly, the Motion [#89] is **denied** to the extent that Defendants seek to exclude the five opinions by Mr. Stamper and Dr. Maguire addressed in this section.

## IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion [#89] is **GRANTED in part** and **DENIED in part**, as follows. The Motion is **granted** to the extent that the following opinions asserted by Mr. Stamper are excluded: (1) opinions related to events other than those involving Plaintiff to support an alleged indiscriminate and inappropriate use of pepperballs and inadequate training; (2) opinions related to the alleged dangerous kettling incident on May 31, 2020; (3) opinions related to alleged inappropriate use of 40mm launchers and other projectiles and inadequate training; (4) opinions related to alleged inappropriate use of pepper spray and inadequate training; (5) opinions related to alleged inappropriate use of flash bangs, stinger grenades, or other explosives and failure to train; and (6) opinions related to Denver's responsibility for the actions of mutual aid agencies since none were involved respecting Plaintiff. The Motion is further **granted** to the extent

22

that the following opinion asserted by Dr. Maguire is excluded: opinion related to training

on 40mm launchers and high-risk explosive devices. The Motion is otherwise **denied**.

Dated: December 18, 2023                          BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge